(No. 38537.—

LARRY ROTH d/b/a LARRY'S BARBEQUE, Appellant, *vs.* NORTHERN ASSURANCE COMPANY LTD., *et al.,* Appellees.

*Opinion filed Nov. 24, 1964.—Rehearing denied Jan. 19, 1965.*

DAN BRUSSLAN, of Chicago, for appellant.

CLAUSEN, HIRSH, MILLER & GORMAN, of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the construction and application of section 24 of the Limitations Act which provides that "if the plaintiff be nonsuited," and the time limited for bringing the action has run during the pendency of the action in which the nonsuit was entered, the plaintiff may commence a new action within one year. (Ill. Rev. Stat. 1963, chap. 83, par. 24a.) The circuit court of Cook County held that section 24 does not apply to a new action to recover upon fire insurance policies, commenced within one year after the original action, brought in a federal district court, had been dismissed for want of the requisite jurisdictional amount. The appellate court affirmed, (46 Ill. App. 2d 253) and we granted leave to appeal to review an asserted conflict in appellate court decisions. See, *Swiontek* v. *Greenstein,* 33 Ill. App. 2d 355; *Lundstrom* v. *Winnebago Newspapers, Inc.,* 32 Ill. App. 2d 266 (abst. op.).

The plaintiff's building was damaged by fire on September 1, 1953. He instituted an action in the federal district court to recover his alleged loss. Each of the five insurance companies which had issued a policy insuring the premises against fire was joined as a defendant. While the total amount of all of the policies was $10,000, each individual policy was for an amount less than the jurisdictional amount of $3,000. The federal district court sustained the

motion of the defendants to dismiss the case for want of jurisdiction on the ground that the claims against the defendants could not be aggregated to make up the requisite jurisdictional amount. Notice of the entry of the order dismissing the case was served on the plaintiff on January 31, 1955. On February 1, 1955, he filed the present action against the same defendants, based upon the same occurrence and the same insurance policies. Each of the policies contained a limitation which required that an action brought upon it be commenced within 12 months from the date of the loss. The original action in the federal court was commenced within the 12 month period, but the present action was not.

We consider first the defendants' contention that the statutory reference to a "nonsuit" does not include the dismissal of an action for want of jurisdiction. In 1942 this same contention was considered and rejected by the Circuit Court of Appeals for the Seventh Circuit in *Sachs* v. *Ohio National Life Insurance Co.* (7th cir.) 131 F.2d 134. After carefully reviewing the authorities, the court said, "The act is remedial, reflecting a legislative intent to protect the party who brings the action in good faith from complete loss of relief on the merits merely because of procedural defect. Such remedial statutes should be liberally construed, so as to prevent destruction of the purpose of the legislation. * * * In both common law nonsuit and dismissal for want of jurisdiction the order is due to some defect in the procedure or proof which prevents a trial on the merits. The obvious purpose of the statute was to give a plaintiff an opportunity to try the merits and it is illogical to assume that the legislature meant to prevent hardship in the case of a nonsuit, but not in that of dismissal for want of jurisdiction. The contrary is clearly intimated in the only pertinent decisions; and by them we are bound. It follows that, as plaintiffs had commenced their new action within a year

after the first one had been dismissed for want of jurisdiction, they were not barred." 134 F.2d at 137.

This construction of the statute has been followed. In *Lundstrom* v. *Winnebago Newspapers, Inc.* 32 Ill. App. 2d 266, section 24 was held to eliminate the bar of limitations as applied to a new action instituted in the circuit court of Winnebago County within one year after an earlier action in a federal district court had been dismissed for want of diversity of citizenship. And in *Swiontek* v. *Greenstein,* 33 Ill. App. 2d 355, section 24 was again applied against the asserted bar of the Statute of Limitations when a new suit was instituted in the state court within a year after an action based upon the same occurrence had been dismissed for want of diversity jurisdiction by a federal court. In our opinion these decisions correctly construe the statute. The cases involving voluntary nonsuits which are relied upon by the defendants, (*Holmes* v. *Chicago and Alton Railroad Co.* 94 Ill. 439; *Boyce* v. *Snow,* 187 Ill. 181; *Herring* v. *Poritz,* 6 Ill. App. 208,) are clearly distinguishable, and they were distinguished by the Circuit Court of Appeals in the *Sachs* case.

Although the defendants have argued this issue, the appellate court in its opinion did not question the construction of the statute adopted in the *Sachs* case. Rather the appellate court held that the first action, "filed in the United States District Court, which lacked jurisdiction, did not constitute a commencement of a suit or action within the period of limitation set forth in the policies of insurance." (46 Ill. App. 2d at 263.) The appellate court felt that this conclusion was required by the opinions of this court in *Herb* v. *Pitcairn,* 384 Ill. 237; 392 Ill. 151; 392 Ill. 138. It therefore disregarded the *Sachs* case, which preceded this court's first opinion in the *Herb* case, and it also disregarded the *Lundstrom* and *Swiontek* cases which neither cited nor discussed the *Herb* case.

*Herb* v. *Pitcairn* was an action under the Federal Employers' Liability Act which was instituted in the city court of Granite City to recover for injuries alleged to have been sustained in the city of Decatur. The case was tried in the city court, its judgment was reversed by the appellate court and the judgment of the appellate court was affirmed by this court. (377 Ill. 405.) The case was then remanded to the city court, and before it was retried this court decided, in *Werner* v. *Illinois Central Railroad Co.* 379 Ill. 559, that city courts were without jurisdiction to hear causes of action that arose outside the territorial limits of the city. The act of 1891, as amended in 1935, relating to venue, then provided that an action commenced in the wrong court or county could be transferred to the proper court by change of venue. (Ill. Rev. Stat. 1941, chap. 146, par. 36; see Ill. Rev. Stat. 1963, chap. 110, pars. 8, 9 and 10.) On the plaintiff's motion, the *Herb* case was transferred to a circuit court. In that court the defendant moved to dismiss the case on the ground that the city court was totally without jurisdiction, and that the action was therefore not commenced within two years from the date of the plaintiff's injury, as required by the Federal Employers' Liability Act. The motion to dismiss was allowed. This court affirmed the judgment dismissing the action. (384 Ill. 237.) It is not necessary to pursue in detail the subsequent vicissitudes of the case in the Supreme Court of the United States and in this court. See 324 U.S. 117, 89 L. ed. 789; 325 U.S. 77, 89 L. ed. 1483; 392 Ill. 151; 392 Ill. 138.

In the case before us the appellate court read the opinions of this court in *Herb* v. *Pitcairn,* as requiring it to hold that for the purposes of section 24 of the Limitations Act an action was not commenced unless instituted in a court of competent jurisdiction. It relied particularly upon this court's statement that "under Illinois law, commencing an action means starting it in a court that has the power to decide the matter involved, to issue process, to bring the

parties to the particular cause before it and to render and enforce a judgment on the merits of said cause." 392 Ill. at 152.

The basic position taken by this court in the *Herb* case was that any judgment rendered by the city court would have been an absolute nullity, vulnerable to collateral attack, and that the process of that court and its subsequent proceedings must therefore be completely disregarded. "The question involved", the court said, "relates to the effect of the proceedings had in a court wholly incompetent to render a valid judgment, because if the judgment to be rendered would be void it necessarily follows the preliminary proceedings of the court, necessary to rendition of judgment, must likewise be void. If the court has no jurisdiction of the subject matter for judgment there can be no jurisdiction giving effect to process or pleadings. If judgment had been entered in the city court it would have been absolutely void." 384 Ill. at 241.

The jurisdiction of the federal district court in which the first action in the case before us was instituted stands upon a very different footing than that of the city court which was involved in *Herb* v. *Pitcairn*. If the question of jurisdiction had not been raised in the federal court, and the case had been disposed of on the merits by that court, its judgment would not have been subject to collateral attack. "The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally." *Chicot County Drainage District* v. *Baxter State Bank*, 308 U.S. 371, 376, 84 L. ed. 329, 333.

Although the *Herb* case is thus distinguishable from the case at bar, we are also of the opinion that its basic approach to the problem was unsound. In its opinions in *Herb* v. *Pitcairn* this court's attention was so centered upon problems of jurisdiction that it failed entirely to consider the purpose of a limitation upon the time within which an action may be commenced. That purpose is to insure repose and to require that claims be advanced while the evidence to rebut them is still fresh. And that purpose had obviously been fully served in *Herb* v. *Pitcairn,* for the case had been tried upon the merits, and had been reviewed upon appeal both by the appellate court and by this court before any question of jurisdiction arose.

The considerations appropriate to determination of the present question are those stated by the New York Court of Appeals in *Gaines* v. *City of New York,* 215 N.Y. 533, 109 N.E. 594. That case arose under a New York statute like section 24 of our Limitations Act. The original action had been commenced in a court which lacked jurisdiction of actions against the city of New York, and it was dismissed upon that ground. After the period of limitations had run a new action was instituted within one year in a court of competent jurisdiction. Speaking through Mr. Justice Cardozo, the court said: "The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law. Questions of jurisdiction are often obscure and intricate. This very question of the power of the City Court to determine actions against the city of New

York will illustrate that truth. O'Connor v. City of New York, 51 Misc. Rep. 560, 101 N.Y. Supp. 295; Id., 191 N.Y. 238, 83 N.E. 979. There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights." 109 N.E. at 596.

*Herb* v. *Pitcairn*, 384 Ill. 237, 392 Ill. 138 is overruled. Since the appellate court rested its decision solely upon the effect that it ascribed to *Herb* v. *Pitcairn*, it did not discuss the other ground upon which the defendants contend that the judgment of the circuit court should be affirmed. It is their position that section 24 of the Limitations Act, as it read in 1955, was by its terms inapplicable to the situation before us. Section 24 now provides: "In any of the actions specified in any of the sections of this act *or any other act or in any contract where the time of commencement of any action is limited,* if judgment shall be given for the plaintiff, and the same be reversed by writ of error, or upon appeal; or if a verdict pass for the plaintiff, and, upon matter alleged in arrest of judgment, the judgment be given against the plaintiff; or, if the plaintiff *has heretofore been nonsuited or shall* be nonsuited, then, if the time limited for bringing such action shall have expired during the pendency of such suit, the said plaintiff, his or her heirs, executors, or administrators, as the case shall require, may commence a new action within one year after such judgment reversed or given against the plaintiff, and not after." (Ill. Rev. Stat. 1963, chap. 83, par. 24a.) By amendment in 1959 the italicized material was added to the section as it read in 1955. Because section 24 as it read in 1955 referred to "any of the actions specified in any of the sections of this act", and because each of the insurance policies upon which the plaintiff seeks to recover contained a provision that no action on the policy "shall be sustain-

able  *  *  *  unless commenced within 12 months next after inception of the loss", the defendants argue that section 24 did not apply.

In our opinion this argument is unsound. The present action upon a written contract is one of the actions specified in the Limitations Act, which requires that such an action be commenced within 10 years. (Ill. Rev. Stat. 1963, chap. 83, par. 17.) The action does not cease to be an action upon a written contract because the contract sued upon contains a provision shortening the period allowed by the statute. The plain purpose of section 24 is to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits. No reason is suggested why this purpose is not just as applicable to a short contractual limitation as it is to the longer statutory period. In neither case is any injury inflicted upon the defendant, who must have knowledge of the claim asserted against it within the time provided by statute or contract, before the provision for the new action becomes operative. Nor does the language of the policies express any purpose to exclude the applicability of section 24. Whether such an exclusion would have been permitted in a standard policy is beside the point, for none was attempted.

No Illinois authorities are cited in support of the construction that the defendants advance, and we have found none. Cases in which contractual limitations have been held valid and enforceable, but which did not construe section 24, do not, of course, determine the applicability of the section. Nor is it persuasive that section 24 has been held not to apply to wrongful death, dramshop, and other statutory actions, which carry their own limitations and are not specified in the Limitations Act. See, *e.g. Bishop* v. *Chicago Railways Co.* 303 Ill. 273.

The defendants rely heavily upon an alternative ground of decision advanced in *Riddlesbarger* v. *Hartford Fire*

*Insurance Co.* 74 U.S. (7 Wall.) 386, 19 L. ed. 257 (1868) which arose under a Missouri statute like section 24. There the Supreme Court held the statute inapplicable, saying: "In the first place, the statute only applies to cases of involuntary nonsuit, not to cases where the plaintiff of his own motion dismisses the action. It was only intended to cover cases of accidental miscarriage, as from defects in the proofs, or in the parties or pleadings, and like particulars. In the second place, the rights of the parties flow from the contract. That relieves them from the general limitations of the statute, and as a consequence, from its exceptions also." (19 L. ed. at 259.) This alternative ground of decision is not convincing. There is a superficially attractive kind of symmetry in the idea that because contractual limitations have supplanted statutory limitations, "exceptions" to the statutory limitations are also supplanted. But no reason is advanced to support the assumption that the legislature, having provided a safeguard against "accidental miscarriage" under a longer period of limitations would have intended that safeguard to be inapplicable to a shorter contractual period. The statute is summarily disposed of without any effort to ascertain the legislative purpose.

The purpose underlying section 24 is the same purpose that animates section 46 of the Civil Practice Act, (Ill. Rev. Stat. 1963, chap. 110, par. 46) which relates to the effect of statutes of limitations upon amended pleadings. "Statutes of limitation, like other statutes, must be construed in the light of their objectives. The basic policy of such statutes is to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible. That purpose has been fully served here. As observed by Mr. Justice Holmes in *New York Central Railroad* v. *Kinney,* 260 U.S. 340, 342, 'Of course an argument can be made on the other side, but when a defendant has had notice from the

beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied.' " *Geneva Construction Co.* v. *Martin Transfer and Storage Co.* 4 Ill.2d 273, 289-90.

The remaining argument advanced by the defendants is based upon the 1959 amendment of section 24. It is said that when the legislature in 1959 included for the first time a specific reference to "any contract where the time of commencement of any action is limited," it recognized that section 24 as it had theretofore existed did not extend to actions upon such contracts. This argument ignores the retroactive aspect of the amendment, which we do not find it necessary to consider in this case. While it is ordinarily assumed that an amendment is intended to change the law as it formerly existed, that assumption is not controlling. (See *Scribner* v. *Sachs,* 18 Ill.2d 400, 411.) To ascribe such a purpose to all amendatory legislation would make it hazardous or impossible to clarify existing ambiguities so that future misinterpretation could be avoided or the recurrence of an erroneous judicial interpretation prevented. (See *People ex rel. Clark* v. *Village of Wheeling,* 24 Ill.2d 267.) For the reasons that we have stated we are of the opinion that section 24, as it existed in 1955, applied to this case.

The judgment of the appellate court is reversed, and the cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*